**SO ORDERED.**

**SIGNED July 30, 2024.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

---

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| In re: <br> Charles Stephen Goodman <br> *Debtor* | Case No. 23-50226 |
| Fundamental Funding, LLC <br> *Plaintiff* | Chapter 7 |
| v. | Judge John W. Kolwe |
| Charles Stephen Goodman <br> *Defendant* | Adv. Proc. No. 23-5008 |

### RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment (ECF #17) filed by Plaintiff, Fundamental Funding, LLC (the "Plaintiff" or "Fundamental"), seeking judgment in its favor on its Complaint against the Defendant Debtor, Charles Stephen Goodman (the "Debtor"). The Complaint alleges that Goodman caused false and misleading written borrowing base certificates to be submitted to Fundamental in support of certain loans made to Cuba Timber, Inc. ("Cuba Timber"), a company wholly owned and controlled by the Debtor. The Debtor also guaranteed the repayment of the loans. Based on these allegations, Fundamental seeks a determination that its claim against the Debtor under the guaranty agreement is

nondischargeable under 11 U.S.C. §§ 523(a)(2)(B) (debt obtained by a materially false statement in writing) and 523(a)(2)(6) (debt obtained by willful or malicious injury). Fundamental has moved for summary judgment on its claim under § 523(a)(2)(B) only, which the Debtor opposes. The Court has considered the parties' pleadings and the summary judgment evidence and rules as follows.

## Summary Judgment Standard

This Motion for Summary Judgment is subject to the usual Fed. R. Civ. P. 56 summary judgment standard, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 is applicable to adversary proceedings. *See* Fed. R. Bankr. P. 7056. The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial.[1] Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses.[2] If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, as Fundamental does here, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party.[3] To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact.

Under Local Bankruptcy Rule 7056-1, the bankruptcy court applies District Court Local Civil Rules 56.1 and 56.2 to the content of the motions and responses.[4]

---

[1] *Goodman v. Triple "C" Marine Salvage, Inc. (In re Gulf Fleet Holdings, Inc.),* 485 B.R. 329, 334 (Bankr. W.D. La. 2013), citing *Matsushita Electric Industries v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

[2] *Id.*, citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

[3] *Id.*, citing *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986).

[4] The Local Rules for the Western District of Louisiana were amended effective May 7, 2024.

LR56.1 requires that every Motion for Summary Judgment "be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." LR56.2 requires that any Opposition to a Motion for Summary Judgment include:

> a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

*Id.*

In support of its Motion, the Plaintiff filed a separate Statement of Facts in Support of Summary Judgment (ECF #18), and in opposition the Debtor filed a competing Statement (ECF #27). These Statements generally comply with the local rules. The Debtor's Statement, however, challenges the competency of the declaration that Fundamental submitted in support of its motion. The Court will address that issue first before turning to the background facts and analysis.

The Debtor claims that the Plaintiff's statement references the "Affidavit of Tim Haddock" but that "Mr. Haddock did not execute an affidavit in support of Plaintiff's Motion or if he did it is not filed in support of Plaintiff's Motion."[5] In fact Mr. Haddock did execute a sworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746, and the Debtor attached the declaration to his Memorandum in Support as Exhibit 1 (ECF #19-2). It appears the Debtor is relying on a hyper-technical distinction between "affidavit" and "declaration" that is unjustified, as the Debtor acknowledges that Mr. Haddock did sign a declaration.[6]

---

Because both this adversary proceeding and the Plaintiff's Motion for Summary Judgment were filed prior to the new rules taking effect, in deciding the Plaintiff's Motion, the Court is applying LR56.1 and LR56.2 as they existed prior to May 7, 2024. It should be noted, however, that the new rules are similar to the ones they replace, with the only difference being that instead of a separate statement of facts by the parties, the parties' statement of material facts are to be included in their briefs, along with citations to the summary judgment record supporting each contention.

[5] Debtor's Statement, p. 1 (ECF #27).

[6] *See* Debtor's Statement, p. 2 (ECF #27) ("The Declaration of Mr. Haddock is not a sworn statement although it alludes to his authority to make sworn statements.").

3

A declaration made under penalty of perjury pursuant to 28 U.S.C. § 1746 is competent summary judgment evidence. *See* Fed. R. Civ. P. 56(c)(1)(A) (permitting a movant to support a motion for summary judgment by "citing to particular parts of materials in the record, including…affidavits or declarations") and 56(d) ("If a nonmovant shows by affidavit or declaration…."). As the Fifth Circuit has noted, "It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment. A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'" *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (footnotes omitted). Mr. Haddock's Declaration states: "I declare the above statements to be true and correct under penalty of perjury as set forth in 28 U.S.C. § 1746."[7] This unambiguously satisfies that standard and therefore is competent summary judgment evidence. The Court rejects the Debtor's baseless challenge to Mr. Haddock's Declaration.

## Background[8]

This saga begins in July 2015, when the Plaintiff, a commercial lender, considered making a line of credit loan to Cuba Timber, a company owned and operated by the Debtor. The Plaintiff performed certain due diligence, including the completion of a "prospect examination" of Cuba Timber; Michael K. Parker conducted the exam on behalf of the Plaintiff from July 14, 2015, through July 16, 2015, and he issued a report on the examination on July 21, 2015. Thereafter, on August 4, 2015, the Plaintiff and Cuba Timber entered into three agreements: a Loan and Security Agreement; a Commercial Schedule to Loan and Security Agreement; and an Accommodation Loan Rider to the Loan and Security Agreement (collectively, the

---

[7] *See* Declaration of Tim Haddock, p. 6 (ECF #19-2).

[8] The facts in this section come from the competing Statements of the Plaintiff (ECF #18, including Mr. Haddock's Declaration and the attachments thereto referred to in the Plaintiff's Statement) and the Debtor (ECF #27).

"Loan Agreement"). The Debtor executed the Loan Agreement on behalf of the company.[9]

The Loan Agreement established a credit limit of $1,750,000, which was comprised of two revolving loans against Cuba Timber's accounts and inventory. The first, referred to as "Revolving Loan I", was tied to Cuba Timber's accounts receivable and was set at the lesser of $850,000 or the "Borrowing Base," which for purposes of Revolving Loan I was defined as 90% of Cuba Timber's "Eligible Accounts." The second, referred to as "Revolving Loan II", was tied to inventory and was set at the lesser of $625,000 or the "Borrowing Base," which for purposes of Revolving Loan II was 50% of Cuba Timber's "Eligible Inventory." As collateral for the loans, Cuba Timber granted a security interest in Cuba Timber's accounts and inventory and in other property of the company.

The Borrowing Base was critical in determining Cuba Timber's entitlement to loans under Loan Agreement. Thus, with each loan request, and from time to time, Cuba Timber was required to furnish the Plaintiff with a Borrowing Base Certificate that calculated the Eligible Accounts and Eligible Inventory available as collateral for the loans, which the Plaintiff says would allow it to "make determinations as to the appropriate amount to advance to Cuba Timber in accordance with the Commercial Schedule and the Loan Agreement."[10]

In connection with the Loan Agreement, the Debtor executed a Surety Agreement, under which he agreed, in the event of a default, to pay all payments due, "including but not limited to principal, additional principal, obligations, interest, legal fees, expenses and costs, and any and all other charges, including any attorneys' fees and costs" incurred by Fundamental in connection with the default.[11]

---

[9] *See* Declaration of Tim Haddock (ECF # 19-2). The three agreements comprising the Loan Agreement are referenced in paragraph 10 of the Declaration and are attached to the Declaration *in globo* as Exhibit A.

[10] Plaintiff's Statement, ¶ 7 (ECF #18).

[11] Plaintiff's Statement, ¶¶ 13-15 (quoting the Surety Agreement in part). The Surety Agreement is attached to Mr. Haddock's Declaration as Exhibit C. *See* ECF #19-2, pp. 52-56.

5

Both the Debtor and Catherine Griffith, Cuba Timber's treasurer and office manager, were authorized to act on Cuba Timber's behalf to "arrange for any borrowings or other financial obligations with [Plaintiff] from time to time."[12] Pursuant to the Loan Agreement, Cuba Timber made certain representations and warranties as to its accounts and receivables, effectively requiring Cuba Timber to affirm that the accounts and receivables in question not only exist but are valid collateral.

There is some uncertainty in the summary judgment record as to the parties' relationship from the inception of the loan until Cuba Timber filed for bankruptcy in the Northern District of Alabama on February 24, 2017,[13] and these discrepancies will be discussed in the analysis section below. It is undisputed, however, that major problems developed in the parties' relationship in February 2017. The Plaintiff asserts that Cuba Timber submitted 17 Borrowing Base Certificates between February 1 and 24, 2017, and that all of them were false, though the Plaintiff does not discuss most of them in any detail. The Plaintiff primarily focuses on just two of the Certificates submitted by Cuba Timber: one on February 17, 2017, one week prior to Cuba Timber's bankruptcy filing, and one on February 24, 2017, the day that Cuba Timber filed bankruptcy. In the February 17th Certificate (signed by the Debtor), attached as Exhibit E to Mr. Haddock's declaration, Cuba Timber claimed to have $1,083,822.77 in Eligible Accounts and $747,076.43 in Eligible Inventory, and it sought and received a $45,000.00 loan from the Plaintiff. In the February 24 Certificate (signed by Ms. Griffith), attached as Exhibit F to Mr. Haddock's declaration, Cuba Timber claimed to have $1,133,819.04 in Eligible Accounts and $696,499.08 in Eligible Inventory, and it sought and received $39,000.00 in loan proceeds.

The Plaintiff asserts, based on the Debtor's testimony from a March 2, 2017 hearing in Cuba Timber's bankruptcy case, that Cuba Timber ran out of timber on

---

[12] Plaintiff's Statement, ¶¶ 16-17.

[13] Case No. 17-70349 in the Bankruptcy Court for the Northern District of Alabama.

6

February 17, 2017, so that there actually was no eligible inventory to support an additional loan on that date, and that on the petition date of February 24, 2017, Cuba Timber only had $202,258.39 in accounts receivable, far below the $1,133,819.04 in Eligible Accounts included in the final Certificate submitted by Cuba Timber on that date. The Debtor also testified that Ms. Griffith did not know the true situation and that only he knew about the lack of inventory.

Based on these two admittedly false Certificates, the Plaintiff contends that the entire amount of its claim, which includes amounts loaned by the Plaintiff prior to the submission of the false Certificates, and which exceeds $1.5 million, should be excepted from discharge under 11 U.S.C. § 523(a)(2)(B). In opposing the Plaintiff's Motion, the Debtor contends factual disputes exist, primarily concerning whether the Plaintiff's reliance on the Borrowing Base Certificates was reasonable. The Court will save its discussion of disputed facts for the below analysis. For the reasons that follow, Fundamental's Motion for Summary Judgment will be denied.

## Law and Analysis

The Plaintiff seeks a judgment excepting the entirety of its claim against the Debtor from discharge under 11 U.S.C. § 523(a)(2)(B), which provides:

> (a) A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— …
> >
> > > (B) use of a statement in writing—
> > >
> > > > (i) that is materially false;
> > > >
> > > > (ii) respecting the debtor's or an insider's financial condition;
> > > >
> > > > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

7

> (iv) that the debtor caused to be made or published with intent to deceive; or . . . .

*Id.*

Each of the elements of § 523(a)(2)(B) must be established by a preponderance of the evidence.[14] Accordingly, the Court will address each of the statutory factors in turn, being mindful of "the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

## § 523(a)(2) – Extension, Renewal, or Refinancing of Credit Obtained By . . .

Section 523(a)(2)(B) makes a debt for money, or the extension, renewal or refinancing of credit, nondischargeable "to the extent obtained by" the use of a materially false written statement. Application of this "to-the-extent-obtained-by" requirement is not straightforward in this case because the Plaintiff did not make a single, lump sum loan to Cuba Timber based on a single written statement. The Loan Agreement between the parties represents a line of credit arrangement that contemplated multiple advances of loan proceeds at various times, with the requirement that each advance be supported by a separate Borrowing Base Certificate. The Plaintiff describes the parties' lending arrangement this way:

> 10. The Agreement provides that, *in order to obtain a Loan from time to time*, Cuba Timber was required to deliver to Plaintiff a Borrowing Base Certificate.

> 11. The Borrowing Base Certificates each include information as to the amount of Cuba Timber's current Eligible Accounts and Eligible Inventory, as said terms are defined in the Loan Agreement, *so that Plaintiff may make determinations as to the appropriate amount to advance to Cuba Timber* in accordance with the Commercial Schedule to the Loan Agreement.

---

[14] *Groner v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

> 12. Throughout Plaintiff's lending relationship with Cuba Timber, Plaintiff reasonably relied upon the Borrowing Base Certificates to determine the amount of credit to extend to Cuba Timber and to gauge its collateral position.

Plaintiff's Statement in Support of Summary Judgment, ¶¶ 10-12 (ECF #18) (emphasis added).

In essence, the Loan Agreement depicts a series of discrete loans each of which corresponds to an individual, newly submitted Borrowing Base Certificate. Thus, as an initial impression, it seems each advance of loan proceeds under the Loan Agreement should be treated as its own extension of credit, with only loan funds advanced based on materially false writings potentially being rendered nondischargeable. This conclusion follows from the straightforward wording of § 523(a)(2):

> [S]ection 523(a)(2) makes a debt nondischargeable only "to the extent" it was obtained by fraud, false pretenses or a false financial statement. If an initial loan is made subject to a false financial statement and new money is advanced under a subsequent loan that is not made under conditions of fraud or false pretenses, then at most only the initial amount of the loan made on the original financial statement is excepted from discharge. Indeed, depending upon the nature of the later transaction, perhaps none of the subsequent loan, including the amount refinanced, was obtained through fraud or false pretenses.

> On the other hand, when the original financial statement is made under nonfraudulent conditions, and the entire loan in addition to new money is advanced on a subsequent false financial statement, the circumstances of the later transaction will determine whether the entire loan is considered to have been made under fraudulent conditions.

COLLIER ON BANKRUPTCY, ¶ 523.08[2][f] (Richard Levin & Henry J. Sommer eds., 16th ed.) (internal citations omitted).

Turning again to this case, the Plaintiff's summary judgment evidence includes 17 Borrowing Base Certificates that Cuba Timber submitted to the Plaintiff from February 1, 2017, through February 24, 2017, the day that Cuba Timber filed for

9

bankruptcy in Alabama.[15] The Court's review of these Certificates show that Timber Cuba requested loan advances ranging from as little as $4,000 on February 23, 2017, to as much $67,500 on February 7, 2017, and that collectively, these 17 Certificates represent requests for Loans totaling $703,300. While the Plaintiff asserts that each of these Borrowing Base Certificates was materially false, and that it "would not have continued to lend to Cuba Timber" "had Cuba Timber not made the false representations,"[16] the record before the Court shows that only two of the Borrowing Base Certificates are indisputably false: the one from February 17, 2017, requesting a $45,000 loan, and the one from February 24, 2017, the day Cuba Timber filed its chapter 11 proceeding, requesting $39,000.[17] Thus, at most, it appears that the Plaintiff advanced $84,000 based on materially false certificates.

Notwithstanding these facts, the Plaintiff claims it is owed $1,512,162.30 after accounting for $180,000 it received in the Cuba Timber Bankruptcy case, and it seeks to have this amount, plus attorney's fees, declared nondischargeable under § 523(a)(2)(B).[18] The Plaintiff's Brief in Support of Summary Judgment appears to provide the Plaintiff's basis for seeking the entire balance of its claim rather than the amounts directly tied to false written Borrowing Base Certificates: "Although Plaintiff advanced new funds to Cuba Timber . . . up to, and including, the day Cuba Timber filed bankruptcy, *the mere renewal of credit over the course of the lending relationship is sufficient to satisfy Section 523(a)(2).*"[19]

The Plaintiff does not point to any provisions in the Loan Agreement that provide for the renewal or refinancing of the entire loan balance with the submission of each Borrowing Base Certificate. Indeed, the Plaintiff does not even attempt to explain how, in the context of the parties' lending relationship, the existing balance on the loan was being extended, renewed, or refinanced when Cuba Timber submitted

---

[15] *See* Plaintiff's Statement, ¶ 28 (ECF # 18)

[16] *Id.* ¶¶ 18 and 29.

[17] *See id.*, ¶¶ 21–26.

[18] *See* Plaintiff's Statement, ¶¶ 31 and 32 (ECF # 18).

[19] Plaintiff's Brief in Support of Summary Judgment, p. 3 (ECF # 19) (emphasis added).

a request for a loan.[20] Instead, the Plaintiff merely cites to *Matter of Norris* 70 F.3d 27 (5th Cir. 1995).

In *Norris,* the court was faced with a debtor, Norris, who provided false financial statements to his bank as part of the annual renewal of his existing loan. These statements showed that Norris had significant surplus cash flow which in turn induced the bank to renew the loan. When Norris later filed bankruptcy, he disclosed that the financial statements that he had provided to the bank as part of the loan renewal process were false. The bank pursued a nondischargeability claim under § 523(a)(2)(B), claiming that it had renewed the loan based on the false financial statements. The debtor argued the debt should be fully dischargeable because no new funds were advanced based on the false statements. The Fifth Circuit rejected this argument finding that a renewal of a fully matured debt based on a fraudulent written statement satisfies the requirements of § 523(a)(2)):

> Norris relies primarily upon *In re Siriani,* 967 F.2d 302, 304 (9th Cir. 1992), in which a debtor's surety who relied upon false documentation in renewing the surety bond was required to prove "that damage proximately resulted from the misrepresentation" in order to have the debt declared nondischargeable. *See also In re Collins,* 946 F.2d 815 (11th Cir. 1991). Unlike Norris, we do not read these cases as grafting onto section 523(a)(2) a proximate causation requirement; rather, we read them as applying the statutory mandate that qualifying debts are nondischargeable "to the extent obtained by" the fraudulent documentation. *In this case, because the renewal of the entire note was "obtained by" Norris's false documentation, it is the entire note which is excepted from discharge.* Insofar as these cases may stand for the proposition that the renewal of a preexisting debt, without more, does not fall within the purview of the statute, we join the First and Tenth Circuits in rejecting such an approach. *See In re Goodrich,* 999 F.2d 22 (1st Cir. 1993)

---

[20] The Commercial Schedule to Loan and Security Agreement defines the "Maturity Date" as the second anniversary of the Effective Date, meaning the loans contemplated under the Agreement would not have matured until on or about August 4, 2017. Payment of the loan in full does not appear to be required until the Maturity Date. *See* Loan Agreement, Ex. A to the Motion for Summary Judgment (ECF #19-2).

11

> (expressly rejecting reasoning of *Siriani* ); *In re Gerlach,*
> 897 F.2d 1048 (10th Cir. 1990). . . .

*Matter of Norris*, 70 F.3d at 29, n. 6 (5th Cir. 1995) (emphasis added). *See also*, *In re Goodrich*, 999 F.2d 22, 25 (1st Cir. 1993) ("[T]here is no requirement that [a creditor] show detriment in the sense of ultimate loss; reasonable reliance on the false statement in renewing the loan is enough.").

The Court is not convinced that the Plaintiff's claims here are factually apposite to *Norris* because this case does not involve the renewal of a fully matured debt. The facts here, as presented in the Plaintiff's Statement in Support of Motion for Summary Judgment, show that the Plaintiff required the submission of the Borrowing Base Certificates so that it could "*make determinations as to the appropriate amount **to advance** to Cuba Timber.*"[21] In the Court's opinion, this phrase is forward-looking, meaning that Plaintiff was using the Borrowing Base Certificates to determine future advances, not whether the existing loan balance should be renewed, extended, or refinanced.

Conceptually, it may make sense for the Plaintiff to have essentially extended or renewed the entire existing loan balance as part of the process of deciding to make additional advances to Cuba Timber based on Borrowing Base Certificates. But that is not what the Loan Agreement appears to provide, and that is not what the summary judgment evidence shows. Perhaps at the trial of this matter the Plaintiff will be able to bridge the gap in the evidence from showing that it merely used the Borrowing Base Certificates to allow for advances of new proceeds, to showing that in deciding to advance new funds based on a Borrowing Base Certificate it was also agreeing to, or in effect, renew the outstanding balance on the loan at that time. Since this evidence and legal analysis of this assertion are lacking, the Court will deny the Plaintiff's motion for summary judgment, at least to the extent the Plaintiff seeks judgment on the entire amount of its claim. However, the Court is convinced that at least $84,000 of the Plaintiff's total claim was obtained by false statements that may

---

[21] See Plaintiff's Statement, ¶ 11 (ECF # 18) (emphasis added).

render at least that amount of the Plaintiff's claim nondischargeable, provided the remaining elements of § 523(a)(2)(B) are satisfied. Thus, the Court will proceed with an analysis of the other elements.

### § 523(a)(2)(B) − Use of a Statement in Writing

To come within the exception of § 523(a)(2)(B), the statement must either have been written by the debtor, signed by the debtor, or the particular writing must have been adopted and used by the debtor. *In re Nance*, 70 B.R. 318, 320 (Bankr. N.D. Tex. 1987). This element is easily satisfied here; the Borrowing Base Certificates are unquestionably "statements in writing," that were either signed or adopted by the Debtor. And it is undisputed that the Debtor caused the submission of the Borrowing Base Certificates to the Plaintiff to support the advancement of loan proceeds.

### § 523(a)(2)(B)(i) − Materially False

A statement is materially false if it is one which "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *In re Nance*, 70 B.R. at 321. This element is also easily satisfied based on the undisputed facts. As discussed above, the Debtor's own testimony given in 2017 in the Cuba Timber bankruptcy shows that the February 17 and 24, 2017 Certificates that the Debtor signed or caused to be signed were materially false because they did not accurately depict Cuba Timber's inventory and accounts receivable, the primary assets underlying the Plaintiff's decision to make loan advances. Moreover, the Debtor's sworn testimony during a hearing in the Cuba Timber bankruptcy case shows he knew these Certificates were false at the time of their submission to the Plaintiff.

### § 523(a)(2)(B)(ii) − Respecting the Debtor's or an Insider's Financial Condition

The statement contemplated by § 523(a)(2)(B)(ii) must pertain to the debtor's or an insider's financial condition. Here it is undisputed that Cuba Timber was an insider of the Debtor. *See* 11 U.S.C. 101(25)(A)(iv). Further, even though the Borrowing Base Certificates primarily focused on two aspects of Cuba Timber's

13

financial condition—inventory and accounts receivable—this is sufficient to satisfy the requirement that the statement be respecting a debtor's or insider's financial condition under the holding of *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 138 S. Ct. 1752, 201 L. Ed. 2d 102 (2018), which takes an expansive view of this factor:

> We also agree that a statement is "respecting" a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. A single asset has a direct relation to and impact on aggregate financial condition, so a statement about a single asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not. Naturally, then, a statement about a single asset can be a "statement respecting the debtor's financial condition."

584 U.S. at 720.

Because the Borrowing Base Certificates have statements concerning Cuba Timber's accounts receivable and inventory that were specifically intended for the Plaintiff to determine whether to loan new funds, the Court finds that those statements were made respecting Cuba Timber's financial condition.

**§ 523(a)(2)(B)(iii) – Reasonable Reliance**

The crux of the Plaintiff's § 523(a)(2)(B) claim is whether the Plaintiff reasonably relied on the Borrowing Base Certificates in deciding to loan additional funds to Cuba Timber. The Court has studied the applicable law and finds that the Plaintiff's statement of law in its brief in support of summary judgment accurately and concisely sets out the law.

Under *Matter of Osborne*, 951 F.3d 691 (5th Cir. 2020), the Fifth Circuit agreed with other circuits in holding that "the reasonable reliance requirement is a low hurdle for creditors to satisfy. The requirement is primarily meant to target bad-faith creditors who ignore red flags with the knowledge that they can later avoid the debtor's discharge under § 523(a)(2)(B)." *Id*. at 699. A creditor must not only prove that it actually relied on the debtor's statement but also that the reliance was reasonable. *In re Trimble*, 482 B.R. 546, 555 (Bankr. N.D. Miss. 2012). "To establish

14

actual reliance, the creditor must show its reliance on the false financial statement was a contributory cause of the extension of credit and that credit would not have been granted if the lender had received accurate information." *Id.* (quoting *Colo. E. Bank & Trust v. McCarthy* (*In re McCarthy*), 421 B.R. 550, 560–61 (Bankr. D. Colo. 2009) (internal quotations omitted). However, "a creditor is not required to assume that a debtor is lying or misrepresenting facts." *In re Morrison*, 361 B.R. 107,123 (Bankr. W.D. Tex. 2007), *aff'd* 555 F.3d 473 (5th Cir. 2009).

The Court looks to the totality of the circumstances to determine whether a creditor's reliance was reasonable, but the Fifth Circuit has long identified three significant factors that a court may consider in determining the reasonableness of a creditor's reliance:

> First, the court can look to whether there had been previous business dealings with the debtor that gave rise to a relationship of trust. Second, the court can consider any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate. Third, the court can ask if even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Matter of Osborne*, 951 F.3d at 698 (footnotes and internal quotation marks omitted).

The Plaintiff contends that the Declaration of Tim Haddock, its representative, and the Borrowing Base Certificates at issue establish the reliance factor. The Court disagrees that it may simply rely on Mr. Haddock's conclusory statement in his Declaration that the Plaintiff reasonably relied on the Borrowing Base Certificates because to do so would require the Court to ignore genuine factual disputes in the summary judgment record. The Court will address each of the three *Coston* factors relevant to reasonable reliance. Additionally, the Court will address the Plaintiff's assertion that it relied upon the false Borrowing Base Certificates to renew the loan.

15

### 1. *Whether There Was a Relationship of Trust Through Prior Business Dealings*

With respect to previous business dealings, the Plaintiff notes that the examination it conducted at the outset of the lending relationship showed that "[t]he collateral levels as shown in the February 2017 Borrowing Base Certificates were not wildly out of line with Cuba Timber's historic levels," and "Debtor's representative testified that there was nothing in its dealings that would indicate that it was fabricating the Borrowing Base Certificates."[22] From this, the Plaintiff apparently seeks to show that there was a relationship of trust. What the Plaintiff omits from this is the fact that the relationship between the Plaintiff and Cuba Timber was not without problems prior to February 2017 according to Catherine Griffith's affidavit submitted by the Debtor in connection with his Opposition to this Motion for Summary Judgment:

> There was a brief period when the [Plaintiff's] account manager, Stephen Butler, had major issues with Cuba's over borrowing [sic], overdrafts at the bank, and the issue of providing funding to cover checks clearing the bank. Mr. Butler was there for approximately 2-3 months. I believe July, August, and September of 2016. He threatened to take over operations of the company if [the Debtor] did not get a better handle on the 'financials.' Even with those concerns and knowledge of Cuba Timber's frequent overborrowing, [the Plaintiff] continued to service the loan with the advances daily and over advances as [the Debtor] requested. A Borrowing Base Ledger Report was kept by [the Plaintiff] for the period '9/1/2016 To 2/24/2017'. The column titled 'Excess Borrowing Base' shows the over-borrowing done by Cuba Timber. [The Plaintiff] knew about the over-borrowing and sometimes complained but did not restrict or cease funding to my knowledge…."

Ms. Griffith's Affidavit, ¶ 8 (ECF #26-1).

These two statements contradict one another. The Plaintiff argues that the financial relationship between the parties was unproblematic, which would favor its

---

[22] Plaintiff's Brief in Support, p. 7 (ECF #19)

argument that there was a relationship of trust prior to the materially false Certificates submitted in February 2017. On the other hand, the Debtor's summary judgment evidence suggests that the relationship was already so problematic by late summer 2016 that the Plaintiff's account manager was threatening to take control of Cuba Timber's operations, which suggests that any such relationship of trust had eroded by that time. This genuine factual dispute cannot be resolved on summary judgment.

### 2. Whether There Were Red Flags

For the "red flags" issue, the Plaintiff only argues that Cuba Timber had substantial inventory in 2016, which shrank by the end of the year, and that "[i]t is not intuitive to expect for nearly a million dollars of inventory, that one would expect to be replenished from time to time, to simply disappear. Nor is [it] intuitive for one to have expected that Cuba Timber would collect accounts receivable and, not pay Plaintiff, but continue to carry those accounts on its Borrowing Base Certificates."[23] These statements imply that there were no red flags prior to February 2017 and that the Plaintiff was caught completely unaware.

Yet, the Plaintiff's own summary judgment evidence shows that even before entering into the Loan Agreement, the Plaintiff was placed on notice that "both the A/R and the inventory turn quickly. . . . At any given point in time there is approximately 8M to 15M tons of timber in the yard. This amount of timber will turnover in less than a week, and is constantly in motion."[24] Moreover, the Prospect Examination alerted the Plaintiff that internal controls at Cuba Timber "were very lax" and that accounting issues existed:

> The Examiner noted that controls at the Company were very lax. The controller acts as the office manager to personal assistant to Steve Goodman the owner. While competent, she is not a trained accountant. Hard cutoffs for

---

[23] *Id.* at p. 7.

[24] Plaintiff's Brief in Support, Exhibit "B" to Exhibit 1 (the Prospect Examination) (ECF 19-2). This part of the report is supplying information that the Debtor had supplied to the Examiner.

control accounts such as A/R were not being adhered to causing variances between the A/R aging and the general ledger. The same was true for the inventory, although given the type of inventory system noted, reconciling the inventory reporting back to the G/L may be difficult. With a disciplined lender in place requiring accurate collateral and financial reporting, it is the Examiner's opinion that these short comings could be overcome.[25]

The Debtor's summary judgment evidence also suggests that there were red flags, notably the Plaintiff's account manager threatening to take control of Cuba Timber's operations in 2016 due to issues with the lending relationship as discussed above.

Simply put, there are genuine factual disputes on this point that the Court is unable to resolve on summary judgment.

### 3. *Whether Minimal Investigation Would Have Uncovered the Truth*

The third and final factor relevant to whether the Plaintiff reasonably relied on the Certificates is whether minimal investigation would have uncovered the truth. The Plaintiff virtually sidesteps the issue by claiming that only the Debtor knew the truth and that not even Cuba Timber's office manager and treasurer, Ms. Griffith knew it, and that the Plaintiff was entitled to rely on Cuba Timber's own reports.[26] However, that is not the issue, and indeed it avoids even addressing it. The issue is whether the *Plaintiff* could have discovered the truth with "even minimal investigation."[27] Here again, the summary judgment evidence presents a genuine factual dispute.

Ms. Griffith's affidavit contains numerous assertions that the Plaintiff had free and extensive access to Cuba Timber's records and physical locations and that it conducted three or four audits between the inception of the loan and February 2017,

---

[25] *Id.*

[26] *Id.* at p. 8.

[27] Matter of Osborne, 951 F.3d at 698.

that the auditors were able to review whatever they wanted, including records of inventories and accounts receivable.[28] Indeed, she stated:

> [The Plaintiff] had access to our customers as well and could at any given time contact a customer concerning shipping reports and A/R. [The Plaintiff] had access to our facilities seven days a week and could physically inspect inventories on our premises or on any location where Cuba Timber inventory was held. I questioned why [the Plaintiff's] representatives were upset with the inaccuracies when they knew for some time about [Cuba Timber's] over-borrowing and [the Plaintiff's] allowance of that practice and given [the Plaintiff's] free access to Cuba's books, records, computers, customers, and overall access to Cuba's business anytime [the Plaintiff] wanted access.[29]

Ms. Griffith also stated that Cuba Timber supplied the Plaintiff with daily inventory reports, receipts, and shipments that showed the true inventory numbers and that the Plaintiff could have compared those records against the Certificates to uncover any discrepancies.[30]

In its Reply Brief, the Plaintiff argues that minimal investigation would not have uncovered it *because* the audits showed that there was nothing amiss. To resolve the conflict between that argument and Ms. Griffith's affidavit, however, would require the Court to weigh evidence, which is not allowed at the summary judgment stage.

### 4. Whether Plaintiff Renewed Credit with each Certificate

As noted above, in the "to-the-extent-obtained-by" section of the Analysis, the Plaintiff contends that it was renewing the loan with each Borrowing Base Certificate. The Plaintiff also states in the section of its Brief that discusses the reliance factor, that it "relied on the Borrowing Base Certificates to advance money and renew credit to Cuba Timber," and directs the Court to Exhibit F in support of

---

[28] *See* Ms. Griffith's affidavit, ¶¶ 2-6 (ECF #26-1).

[29] *Id.*, ¶ 10.

[30] *Id*, ¶ 12)

19

this assertion.[31] Exhibit F is the Borrowing Base Certificate from February 24, 2017. There does not appear to be anything in this Certificate indicating that the loan is being renewed. All it clearly shows, with respect to the loan, is that $39,000 is being requested, and the record reflects this amount was actually loaned on that date.

As noted above, neither the Loan Agreement nor the Plaintiff's description of how the parties functioned under that agreement, indicate that the loan was being renewed with the submission of each Borrowing Base Certificate. The Plaintiff may be able to present additional factual support and/or legal analysis to support this assertion, but the Court is simply unable to reach that conclusion based on the summary judgment record before it.

### 5. Summary

In short, the competing summary judgment evidence submitted by the parties presents a genuine factual dispute on each of the three prongs of the reasonable reliance factor under § 523(a)(2)(B)(iii). Additionally, there is the unresolved issue of whether the entire loan balance was renewed by the Plaintiff based on the false Borrowing Base Certificate dated February 24, 2017. Thus, the Court is unable to determine whether the Plaintiff reasonably relied on the materially false Borrowing Base Certificates under the summary judgment standard. For this reason alone, the Court must deny summary judgment and reserve the determination of the factual dispute for trial.

### § 523(a)(2)(B)(iv) − Intent to Deceive

Finally, the Debtor's 2017 testimony in the Cuba Timber bankruptcy establishes to the Court's satisfaction the intent to deceive. For instance, the Debtor testified that he knew there was no saleable inventory on February 17, 2017, when he signed the Borrowing Base Certificate listing nearly $750,000 in inventory, and he caused the February 24, 2017 Certificate to be signed by Ms. Griffith (who

---

[31] Plaintiff's Brief in Support, p. 6.

apparently had no knowledge of the truth) on the same facts. Because the Certificates were submitted for the purpose of obtaining loans and the Debtor unquestionably knew the statements did not paint a true picture of Cuba Timber's inventory or accounts receivable balances, the Court finds that the Plaintiff has proven the intent to deceive.

## <u>Conclusion</u>

The record before the Court shows that the Debtor submitted, or caused to be submitted, at least two false Borrowing Base Certificates to the Plaintiff, and that the Plaintiff made loan advances to Cuba Timber in the amount of $84,000 based on these Certificates. With respect to this amount, the Court finds that the Plaintiff has satisfied all of the requirements of § 523(a)(2)(B), with the exception of § 523(a)(2)(B)(iii) concerning reasonable reliance, with respect to which material disputes of fact exist. Additionally, the Court is not persuaded, based on the summary judgment record, that the Plaintiff renewed the entire existing balance of its loan to Cuba Timber at the time it made advances of new funds based on the false Borrowing Base Certificates. At trial, the parties will be expected to fully address all of the relevant issues identified in this opinion, including the reasonable reliance issue and the amount of the debt potentially subject to a nondischargeability determination. Accordingly,

IT IS ORDERED that the Plaintiff's Motion for Summary Judgment (ECF #17) is DENIED.