

**SO ORDERED.**

**SIGNED March 31, 2025.**

_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

---

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| In re: <br> Charles Stephen Goodman <br> *Debtor* | Case No. 23-50226 |
| Fundamental Funding, LLC <br> *Plaintiff* | Chapter 7 |
| v. | Judge John W. Kolwe |
| Charles Stephen Goodman <br> *Defendant* | Adv. Proc. No. 23-5008 |

### MEMORANDUM OPINION

The Court held a trial in this case on January 29 and 30, 2025. The Court heard testimony from Tim Haddock, a representative of the Plaintiff, Fundamental Funding, LLC ("Fundamental" or "Plaintiff"); the Defendant, Charles Goodman, ("Debtor"); and Cathy Griffin, an assistant to the Debtor and accountant for Cuba Timber, Inc. ("Cuba Timber"). Additionally, numerous documents were admitted into evidence. The Court took this matter under advisement at the conclusion of the trial. The issue for decision is whether Fundamental's claim against the Debtor should be held nondischargeable under 11 U.S.C. § 523(a)(2)(B). The Court has carefully considered the trial testimony and the documentary evidence, and for the reasons set

out below, the Court grants judgment in favor of Fundamental and against the Debtor.

## BACKGROUND

The Court previously entered a Ruling and Order on Motion for Summary Judgment (ECF #35), denying the Plaintiff's Motion for Summary Judgment on the ground that the Plaintiff had failed to prove all required elements of its claim. For the sake of efficiency, the Court adopts the Ruling and Order by reference as if repeated herein and will summarize the relevant points.

The Debtor owned and operated Cuba Timber, which operated a lumber yard in Alabama. Cuba Timber entered into a multi-contract Loan Agreement with the Plaintiff.

> The Loan Agreement established a credit limit of $1,750,000, which was comprised of two revolving loans against Cuba Timber's accounts and inventory. The first, referred to as "Revolving Loan I", was tied to Cuba Timber's accounts receivable and was set at the lesser of $850,000 or the "Borrowing Base," which for purposes of Revolving Loan I was defined as 90% of Cuba Timber's "Eligible Accounts." The second, referred to as "Revolving Loan II", was tied to inventory and was set at the lesser of $625,000 or the "Borrowing Base," which for purposes of Revolving Loan II was 50% of Cuba Timber's "Eligible Inventory." As collateral for the loans, Cuba Timber granted a security interest in Cuba Timber's accounts and inventory and in other property of the company.
>
> The Borrowing Base was critical in determining Cuba Timber's entitlement to loans under Loan Agreement. Thus, with each loan request, and from time to time, Cuba Timber was required to furnish the Plaintiff with a Borrowing Base Certificate that calculated the Eligible Accounts and Eligible Inventory available as collateral for the loans, which the Plaintiff says would allow it to "make determinations as to the appropriate amount to advance to Cuba Timber in accordance with the Commercial Schedule and the Loan Agreement."[1]

---

[1] Ruling and Order on Motion for Summary Judgment, p. 5 (ECF #35) (footnote omitted).

The Debtor also executed a Surety Agreement, agreeing to pay, in the event of a default, all payments due, "including but not limited to principal, additional principal, obligations, interest, legal fees, expenses and costs, and any and all other charges, including any attorneys' fees and costs" incurred by Fundamental in connection with a default.[2]

Cuba Timber defaulted, filing for bankruptcy protection on February 24, 2017, in the Northern District of Alabama. The Plaintiff filed a proof of claim in the Cuba Timber bankruptcy case and claims that it is currently owed $1,512,162.30 on that claim after accounting for $180,000 it received in the Cuba Timber Bankruptcy case. It is undisputed that the Debtor is obligated to repay this Debt under the terms of the Surety Agreement.

The Debtor filed a chapter 7 bankruptcy case in this Court on June 22, 2023. The Plaintiff then filed this adversary proceeding seeking a judgment rendering the Cuba Timber debt nondischargeable as to the Debtor under 11 U.S.C. § 523(a)(2) (false statements) and 523(a)(6) (willful and malicious injury), with interest running from February 17, 2017. On the nondischargeability question, the Plaintiff only focused on § 523(a)(2) at the summary judgment stage and at trial, so the Court will limit its analysis to that statute, particularly because relief under § 523(a)(6) would be duplicative.

In its Motion for Summary Judgment, the Plaintiff claimed that 17 separate Borrowing Base Certificates that Cuba Timber had submitted to the Plaintiff during the month of February 2017 (the "February 2017 Certificates") were materially false because they overstated the Debtor's accounts receivable and inventory—the two categories of collateral securing the Plaintiff's loan to Cuba Timber. The Plaintiff also claimed that it relied upon these false Certificates and made 17 separate loan advances to Cuba Timber in February 2017, totaling $703,300.[3]

---

[2] *Id.*

[3] *Id.* at pp. 6, 10.

3

Although the Plaintiff asserted that all of the February 2017 Certificates were false, it only addressed two of them in its Motion: one dated February 17, 2017, for $45,000, and one dated February 24, 2017, for $39,000. The summary judgment record indisputably established that those two Certificates were false, but the Court left open the possibility that the Plaintiff might prove others to be false at trial.

There is an additional issue that arose on summary judgment that concerns the total amount of the debt that the Plaintiff is seeking to have declared nondischargeable. Although the Plaintiff only focused on the February 2017 Certificates (totaling $703,300 in advanced funds), it sought a judgment of nondischargeability on the entire amount owed by Cuba Timber and the Debtor through the Surety Agreement, $1,512,162.30. The Plaintiff's theory was that each advancement of funds under a Certificate acted as a renewal of the entire loan balance. In its Ruling and Order on the Motion for Summary Judgment, this Court rejected that argument, concluding that each advance based on a Certificate was effectively an independent loan.[4]

> The facts here, as presented in the Plaintiff's Statement in Support of Motion for Summary Judgment, show that the Plaintiff required the submission of the Borrowing Base Certificates so that it could "*make determinations as to the appropriate amount **to advance** to Cuba Timber.*" In the Court's opinion, this phrase is forward-looking, meaning that Plaintiff was using the Borrowing Base Certificates to determine future advances, not whether the existing loan balance should be renewed, extended, or refinanced.
>
> Conceptually, it may make sense for the Plaintiff to have essentially extended or renewed the entire existing loan balance as part of the process of deciding to make additional advances to Cuba Timber based on Borrowing Base Certificates. But that is not what the Loan Agreement appears to provide, and that is not what the summary judgment evidence shows. Perhaps at the trial of this matter the Plaintiff will be able to bridge the gap in the evidence from showing that it merely used the Borrowing Base Certificates to allow for advances of new proceeds, to

---

[4] *See* Ruling and Order on Motion for Summary Judgment, pp. 8-13 (ECF #35).

4

showing that in deciding to advance new funds based on a Borrowing Base Certificate it was also agreeing to, or in effect, renew the outstanding balance on the loan at that time. Since this evidence and legal analysis of this assertion are lacking, the Court will deny the Plaintiff's motion for summary judgment, at least to the extent the Plaintiff seeks judgment on the entire amount of its claim.[5]

As noted in the above excerpt, the Court left open the possibility that at trial the Plaintiff could "bridge the gap in the evidence from showing that it merely used the Borrowing Base Certificates to allow for advances of new proceeds, to showing that . . . it was also agreeing to . . . renew the outstanding balance on the loan at" the time of each advance.[6] During the trial, the Plaintiff's representative, Mr. Haddock, testified that it was his opinion that Cuba Timber was "reaffirming" or "renewing" the entire Cuba Timber debt with the submission of each Borrowing Base Certificate. The Court assumes the purpose of this testimony was to convince the Court that the entire loan balance should be held nondischargeable, not just the advances on the February 2017 Certificates, which were the only ones presented at trial.

Notwithstanding Mr. Haddock's opinion, the Court stands by its previous ruling on this matter and finds that the Plaintiff was relying on the Borrowing Base Certificates for the purpose of determining future advances under the Loan Agreement, not whether the existing loan should be renewed, extended, refinanced or reaffirmed. Thus, only advances made based on a false Borrowing Base Certificate can be nondischargeable. As noted, the only borrowing base certificates presented during trial were the February 2017 Certificates. Therefore, if each of those certificates are shown to be false, then the total amount that may be held nondischargeable in this case is $703,300, which is the total amount of advances of new money made under the February 2017 Certificates.

## ANALYSIS

The Plaintiff's claim is based on 11 U.S.C. § 523(a)(2)(B), which provides:

---

[5] *Id.*, p. 12 (citations and footnotes omitted, emphasis in original).

[6] *Id.*

5

(a) A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— …

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or . . . .

*Id*. Each of the elements of § 523(a)(2)(B) must be established by a preponderance of the evidence.[7]

In its Ruling and Order at the summary judgment stage, the Court found that § 523(a)(2)(B)(ii) was established as to all of the February 2017 Certificates because they were statements pertaining to the debtor's financial condition given their purpose under the Loan Agreement. The Court also determined that § 523(a)(2)(B)(i) and (iv) were established as to the February 17 and February 24, 2017 Certificates, because the summary judgment record conclusively established they were materially false, and that in submitting them the Debtor intended to deceive the Plaintiff.

Thus, the primary issues for trial were whether the February 2017 Certificates, other than those from February 17 and 24, were false and submitted with an intent to deceive, and whether the Plaintiff reasonably relied upon each of the February 2017 Certificates in making loan advances to Cuba Timber.

---

[7] *Groner v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

6

### *Were Each of the February 2017 Certificates Materially False and Submitted with an Intent to Deceive?*

A statement is materially false if it is one which "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *In re Nance*, 70 B.R. 318, 321 Bankr. N.D. Tex. 1987). Based on the Debtor's testimony given at trial, which the Court finds to be credible, the Court has no trouble finding that each of the February 2017 Certificates was materially false and that they were submitted to the Plaintiff with the intent to deceive. The Debtor testified that due to improper management of the lumber yard, new timber was being sold first instead of old timber, and the old timber was losing weight due to evaporation, also known as shrinkage. That meant that although the timber looked fine, it weighed substantially less and had lost significant value. Thus, even though the testimony established the Plaintiff was routinely performing a visual inspection of the timber in the yard, an ordinary visual inspection would not necessarily have uncovered any abnormalities. But the Debtor knew the truth. The Debtor also testified that he knew by the end of January 2017 that the reported inventory did not match what was actually on hand, but he did not adjust the inventory numbers before submitting the February 2017 Certificates.

Based on the Debtor's testimony, the Court finds that each of the February 2017 Certificates that the Debtor submitted or caused to be submitted on behalf of Cuba Timber were both materially false and made with the intent to deceive, as the Debtor needed the additional funding to attempt to keep its doors open, and to pay other obligations.[8] Thus, as to each of the February 2017 Certificates, § 523(a)(2)(B)(i)

---

[8] The Plaintiff presented evidence that the accounts receivable balances listed on each of the February 2017 Borrowing Base Certificates were also materially false, although the Court disallowed some of the evidence based on hearsay. Mrs. Griffin, who was the Debtor's assistant, also testified regarding difficulties she encountered in reconciling accounts receivable balances in accordance with the Plaintiff's requirements. While there appear to have been material irregularities in the Accounts Receivable balances in the February 2017 Certificates, the Court's decision is based primarily on Debtor's testimony that conclusively established that those Certificates were false with respect to inventory.

and (iv) are satisfied. The focus now turns to whether it was reasonable for Fundamental to have relied upon these false Certificates.

### *Was Fundamental's Reliance on the Borrowing Base Certificates Reasonable?*

The Fifth Circuit has identified three significant factors that a court should consider in determining the reasonableness of a creditor's reliance:

> First, the court can look to whether there had been previous business dealings with the debtor that gave rise to a relationship of trust. Second, the court can consider any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate. Third, the court can ask if even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Matter of Osborne*, 951 F.3d 691, 698 (5th Cir. 2020) (footnotes and internal quotation marks omitted).

Based on the trial record, the Court finds that the Plaintiff's reliance on the February 2017 Certificates was reasonable. First, although there were some issues with the commercial relationship under the Loan Agreement concerning overborrowing, there were no prior problems concerning inaccurate accounting in the Certificates, so there was a sufficient relationship of trust as to the reported levels of inventory and accounts receivable.

Second, and related, although there was some risk involved in lending to a company with high inventory and accounts receivable turnover, the Court finds that there were no major red flags concerning misrepresentations or inaccurate reporting of those levels until Cuba Timber filed for bankruptcy, when it became clear that at least some of the most recent Certificates were false.

Third, the Court finds that minimal investigation would not have uncovered the truth. The Debtor testified that the issue of wood shrinkage was not obvious and would only be discoverable by weighing the timber, so an ordinary visual inspection would not have uncovered the problem. Not only that, but the Debtor testified that the major inventory shortfall only occurred in late January 2017, less than a month

8

before Cuba Timber filed for bankruptcy, so there was effectively no time for the Plaintiff to discover the problem before it was too late.

Fourth and finally, the Court finds, based on Mr. Haddock's credible testimony, that the Plaintiff actually relied on the statements in each February 2017 Certificate to lend money to the Debtor pursuant to the Loan Agreement.

The Court therefore finds that the Plaintiff's reliance on the Certificates was reasonable. The Debtor's testimony virtually mandates these findings. The Debtor knew that the Certificates included materially false statements that the Plaintiff would reasonably rely on to loan additional money, and that is exactly what happened.

Because the Debtor knew by the end of January 2017 that there was effectively no inventory to justify the additional loan proceeds, the Plaintiff is entitled to judgment rendering all the advances made under the February 2017 Certificates nondischargeable under § 523(a)(2)(B), with interest running from February 17, 2017, as prayed for in the Complaint.[9]

## CONCLUSION

With respect to the February 2017 Certificates, the Plaintiff has established each of the elements of § 523(a)(2)(B). Accordingly,

**IT IS ORDERED** that there be Judgment in favor of the Plaintiff, Fundamental Funding, LLC, and against the Defendant Debtor, Charles Stephen Goodman, rendering the Plaintiff's claim against the Debtor nondischargeable in the amount of $703,300, with interest running from February 17, 2017, as prayed for in the Complaint.

---

[9] The record does not set out other categories of damages, so they will be limited to the loan proceeds at issue and interest.

9